Good morning, Your Honor. Janet Ping. May it please the Court? How are you? Good, thank you, Your Honor, and good morning to you. You were able to hear the prior argument, I gather? Yes, Your Honor, and I was able to also hear the government's position and the Court's questions. Very good. I was just making sure that we're all on the same page, since the cases obviously have some elements in common. But please go ahead. Yes, Your Honor. And I'll just get right into that. The elements in common here is that Mr. Jing, as was with Mr. Minto, was found inadmissible under 1182A7 and not A6. Now, Mr. Jin Jingwo received his notice of appearance to immigration court for the start of his removal proceedings in October of 2010. And since that time, he hasn't been able to address his status because he's in these removal proceedings. Mr. Jing was already in the CNMI, and that's an important factor that was discussed in the prior arguments. And he never applied for admission. The immigration judge did not find him removable under A6, only A7. And that's an important distinction here. In my brief, I actually focused more on his CNMI status and how A7 is inapplicable for his removal. And I see that Mr. Minto's counsel focused mostly on the inapplicability of A7 to the removal proceedings or to removal for both Mr. Jing and Mr. Minto. I think that's the common thread here. Doesn't he have to establish that he was lawfully present in CNMI to obtain relief? If the finding of inadmissibility under A7, if it was under A7, that would be irrelevant, Your Honor, which is why I spent a great deal of time saying it didn't apply. A7 does not apply here. They should have found it under A6, but even if they did say A6, then he has the umbrella permit that was issued by the CNMI government. Could you point out to me, Ms. King, where in the record by record citation there is any evidence that Mr. Jing indeed had a permit under the umbrella permit provisions? Would you give me that citation? If you look at – there was a publication made by the Department of Labor. I put it in page 7 of my opening brief. When the Superior Court published an order granting umbrella permits to certain people, he was on the list that was published in the newspaper. The question is pretty simple. Yes, Your Honor. The question is very simple. Does he have a work permit? Yes, Your Honor. Oh, I'm sorry, I misunderstood. Not a work permit, Your Honor. He did enter the CNMI under a work permit. He had a 240K, but I was more referring to an umbrella permit that was issued to him on November 26, 2009. It's in page 8 of my opening brief, and that was in a notice that there's a conditional umbrella permit to listed individuals. And I note that he was number 230 on that list. And I'm sorry, where is that list? The list was an attachment to my opening brief, and it was published in a newspaper or several newspapers in the CNMI of wide circulation. It's described in page 8 and page 9 of my opening brief. The Saipan Tribune, the Marianas Variety, and the Pacific Weekly. Again, he was in the CNMI. Page 18? Page 8 and page 9. No, I'm talking about the appendix. This is page 18 of those Mimeograph pages. Yes, Your Honor, and he is number 230. And explain again what this is? The Superior Court issued this? No, Your Honor, the Superior Court was addressing those individuals who had pending labor-related cases. This was during the CNMI time. And afterwards, the CNMI Attorney General issued a notice or published a notice on November 26, two days before federal takeover, on November 26, 2009, listing individuals who had conditional umbrella permits. And soon after that was when Mr. Jingjing Wu was issued a notice to appear for his removal proceedings in 2010. So is your position that this gave him lawful status in CNMI? Yes, Your Honor, and that was principally what I focused on when I put my brief together. But I do think the more pressing legal analysis was done by Mr. Minto's counsel, the argument you heard earlier that the issue here is the application for admission language that is central to a finding of inadmissibility under Section A7. Do we owe any deference to the Attorney General on how to construe the statutory language? I mean, you and Mr. Horry argue that this must apply to actual physical application for admission. They actually stepped up and made an application. The Attorney General says, no, the language means you are deemed to be an applicant as an operation of law. And to me, both constructions seem plausible. Do we owe any deference to the Attorney General? The Attorney General is charged with administering the statute, applying it. The BIA and the IJs have expertise in this area. Do we not owe them some deference in which construction to adopt? I think that it would be instructive to look at the case that Mr. Minto had brought up. I'm not really familiar with, I'm not prepared at this time to distinguish between what the Attorney General, I guess, Your Honor, I would ask that you clarify what you're asking about. What I'm asking was, we have under principles of administrative law that I think we all learned about in law school. When an executive branch official is given authority to administer a statute, that official is given a certain degree of deference when the language is ambiguous. This is Chevron and a series of cases in the Supreme Court that say that when the language is unclear, when the language is ambiguous, when it's capable of construction in two different ways, the person charged with administering the statute is given deference as to which interpretation to select. Now there are some situations where there is more deference and less deference, depending on the status of the official. So the question I was asking is, is the Attorney General the kind of official to which we owe deference? If the two meanings are plausible, are we not required, as a matter of deference, to adopt the meaning put forward by the Attorney General? It's a straightforward administrative law question. Yes, Your Honor. It's a BIA decision, and I think that's what we're talking about here, interpretation in a BIA decision. It doesn't carry the force of law, and I think that was brought up in the Minto brief, a copy of which I have here. Well, the question is not whether it carries the force of law. The question is whether it is owed deference, whether in making our decision as to which construction to adopt, whether we owe deference to the administrative officials administering the statute. I would have thought the answer was pretty clearly yes, but maybe you have a different idea. It depends, Your Honor. We would cite Skidmore v. Swift and Company, and that was cited in Minto's brief. There's deference accorded proportional to its thoroughness, its reasoning, its consistency, its ability to persuade, but there's no deference at all accorded if the decision is conclusory and it lacks any meaningful analysis. Ms. King, one question before you leave. I've been looking at the exhibits which you mentioned regarding the umbrella permit, and it strikes me that that publication by the Department of Labor was a conditional permit and required, among other things, the payment of a fee, police clearance, a proof of a valid passport, proof of employment, etc., etc. Where in the record can I find that your client, who claims to have an umbrella permit, paid the fee, provided police clearance, and fulfilled the other conditions? I don't have that in the record, Your Honor. Well, did he? Do you claim that he did? Later on, later after in 2011, the Attorney General's Office, or actually the Department of Labor of the CNMI, did say that some of the umbrella permits would be revoked, but that came after 2009, and that's important to note. That's not really my question. I'm not asking about whether they were revoked. I'm asking whether there's proof that your client fulfilled the conditions which appear on the first notice of the Department of Labor publication to which you have cited us. Yes or no? At the time of his claim of having an umbrella permit, had he fulfilled the conditions? And if so, tell me where in the record I can find evidence of that. There is nothing in the record, Your Honor, at the time. Thank you very much. Thank you. A yard of time. We'll hear from the Governor. Thank you, Your Honor. Good morning, Your Honor. It's Jessica Burns on behalf of the Attorney General. In this case, there's really only one issue, and that was presented to the agency at least, and that was whether Mr. Ginn was in possession of a valid entry document. Although Petitioner's Counsel now challenges whether or not he was an applicant for admission, that claim was unexhausted to the agency and also waived in her brief to this Court. So it's really not appropriate to present it for the first time at oral argument. But it's not like the government is going to be surprised by it because it had to deal with it in Mentor's case. Correct, Your Honor. But the agency didn't have the opportunity to determine in the first instance, or at least consider his challenges to whether or not he was an applicant for admission. However, much like Mentor's case, because he admits he was never admitted by a United States immigration official, the government would contend that the only other status he could be in is that he is an applicant for admission. And the Court does owe deference under Skidmore to the Board's decision in this case interpreting that both Mr. Mentor and Mr. Ginn are applicants for admission. You agree it's Skidmore deference? Yes, because it's an unpublished. Both of these involve unpublished Board cases. And I don't think that the Board has addressed at least the circumstances in CNMI in a published decision. Didn't he admit to the IJ when he appeared? He did appear for an IJ, right? Correct, Your Honor. And didn't he admit that he did not have a work permit? Correct, Your Honor. Before the immigration judge, Ginn admitted several times on the record that he was not in possession of an umbrella permit. The first time he presented the umbrella permit, he didn't present it to the Board either. So it's an unexhausted claim. The first time that Mr. Ginn said that he had an umbrella permit was the appendix to the brief to this Court. Now, he's never explained why he didn't present this to the immigration judge or the Board. And this is the type of document that's inappropriate for judicial notice, especially when it's directly contradicted by his own testimony that he was not actually issued an umbrella permit, but he should have been. He was sort of complaining that they delayed or didn't give it to him for some illegitimate or otherwise reason, right? Correct. There's at least four instances on the record where he said, I should have been issued an umbrella permit and I was not. So his claim that now he was issued one before the effective date of the CNRA is something that needs to go to the agency first to assess the credibility and origin of the documents attached to his brief and also to see whether he met the conditions for a conditional umbrella permit, as Judge Bea pointed out. Because he was not in possession of a valid entry document, he was properly found to be removed under 1182A7. And furthermore, even if he had an umbrella permit, those umbrella permits were only valid until November 27, 2011. So remand in this case for consideration of the umbrella permit would be futile because at the time of the Board's April 2013 decision, the umbrella permit would no longer have been valid. If there aren't any other questions from the panel. Thank you very much, Your Honors. Okay, thank you. Case just argued, stand submitted.
judges: Kozinski, Hawkins, Bea